00 - 9009

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CIV-MIDDLEBROOKS

| | | |
|---|---|---|
| NED L. SIEGEL, GEORGETTE SOSA DOUGLAS, GONZALO DORTA, CARRETTA KING BUTLER, DALTON BRAY, JAMES S. HIGGINS, and ROGER D. COVERLY, as Florida registered voters, | ) ) ) ) ) ) | Case No.   MAGISTRATE JUDGE BANDSTRA |
| and | ) ) | |
| GOVERNOR GEORGE W. BUSH and DICK CHENEY, as candidates for President and Vice President of the United States of America, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| THERESA LePORE, CHARLES E. BURTON, CAROL ROBERTS, JANE CARROLL, SUZANNE GUNZBURGER, ROBERT LEE, DAVID LEAHY, LAWRENCE KING, JR., MIRIAM LEHR, MICHAEL McDERMOTT, ANN McFALL, and PAT NORTHY, in their official capacities as members of the County Canvassing Boards of Palm Beach, Miami-Dade, Broward and Volusia Counties, respectively, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) / | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, by their counsel, seeking declaratory and injunctive relief against Defendants,

state the following:

## INTRODUCTION

1.     This lawsuit is brought to preserve the integrity, consistency, equality, and finality of the most important civic action that Americans take: their votes in an election for the President of the United States. It is brought reluctantly, because the election of the President is properly left to the people, not the courts. But it is necessary because the current course of events threatens to undermine that democratic process.

2.     The Constitution and laws of the United States and the laws of Florida prescribe a process for selecting electors of the President and Vice President of the United States. Pursuant to those requirements, the people cast their votes on November 7, 2000. The votes (other than the overseas absentee ballots) were counted in Florida and Governor George W Bush and Dick Cheney received the most votes.

3.     Because the margin was less than one-half of one percent, Florida law required an automatic recount. After completion of this automatic recount, Governor George W. Bush and Dick Cheney again received the most votes.

4.     There is no allegation or evidence of voter fraud, or of coercion or corruption. There is thus no basis for further recounts.

5.     Not content, however, with the results of the first and second counts, certain individuals and groups have now launched a series of legal and administrative actions to delay and ultimately attempt to change the electoral result. This action could nullify the first and second ballot counts and alter the results of those counts by means of a third round of manual counts. Those manual counts would not be universal, rather they would be limited to selected ballots in selected counties.

6.      Though perhaps carried out with the best intentions, the manual counts would not be more accurate than the automated counts – indeed, they are less fair and accurate. Human error and individual subjectivity would replace precision machinery in tabulating millions of small marks and fragile hole punches. If this recount does not yield the desired result, perhaps another, in yet another county, might. Indeed, the process appears to permit repeated counts. And no uniform procedures or standards govern when or how it might happen.

7.      The problems of inherent unreliability and subjectivity of manual counts are magnified in this case where the shifting of a few votes could determine the outcome of this Presidential election.

8.      At some point, Florida voters – indeed all Americans – are entitled to certainty and finality. If enough human hand counts are conducted, with enough potential human error, the result could presumably change – and perhaps even change back. But the changed result would not be the most accurate result, simply the most recent one. The official count, on Election Day, yielded a final answer through a counting process that was untainted by fraud or misconduct. The official recount, two days later, confirmed that result.

9.      Both counts have been by the most accurate means available. Further recounts, by human hand until the results are different, will not further the interests of the voters or of the nation. They will not further, but rather will undermine, the integrity of the election. This court's intervention is necessary to protect the integrity of the constitutional process for selecting the President of the United States.

## PRELIMINARY STATEMENT

10.     This is a civil action for declaratory and injunctive relief under the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983. This action

miami 252257 v1 14z7b1! doc!

seeks to prevent further and needless recounts of the ballots in the statewide election of November 7, 2000 and to require the certification and release of the twice-counted vote tallies. Absent a showing of fraud, corruption, or coercion in the voting process by Defendants, such remedies should be ordered to avoid the debasement of Plaintiffs' votes and the voting process in the State of Florida.

## JURISDICTION AND VENUE

11.     This is a civil action for declaratory and injunctive relief under Section 1 of the Civil Rights Act of 1871, 17 Stat. 13, 42 U.S.C. § 1983, and the First and Fourteenth Amendments to the United States Constitution.

12.     The jurisdiction of this Court is based on 28 U.S.C. §§ 1331 and 1343.

13.     Venue is proper in this Court because at least one of the Defendants resides within the Southern District of Florida and all of the Defendants reside within the State of Florida.  28 U.S.C. § 1391(b).

## PARTIES

14.     Plaintiffs Governor George W. Bush and Dick Cheney are the Republican candidates for President and Vice President of the United States.  Plaintiffs Bush and Cheney have a substantial constitutional interest in having the votes certified and released without further delay, as Defendants' decision to permit further recounts violate the due process rights of Governor George W. Bush and Dick Cheney.

15.     Plaintiff Ned L. Siegel is a resident of Palm Beach County, Florida, and is a registered voter in Florida.  In the general election on Tuesday, November 7, 2000, Plaintiff Siegel sought to cast his ballot for Governor George W. Bush for President of the United States and Dick Cheney as Vice President of the United States.

16.     Plaintiff Georgette Sosa Douglas is a resident of Broward County, Florida, and is a registered voter in Florida.  In the general election held on Tuesday, November 7, 2000, Plaintiff Sosa Douglas sought to cast her ballot for Governor George W. Bush and Dick Cheney as President and Vice President of the United States.

17.     Plaintiff Gonzalo Dorta is a resident of Miami-Dade County, Florida, and is a registered voter in Florida.  In the general election held on Tuesday, November 7, 2000, Plaintiff Dorta sought to cast his ballot for Governor George W. Bush and Dick Cheney as President and Vice President of the United States.

18.     Plaintiff Carretta King Butler is a resident of Volusia County, Florida, and is a registered voter in Florida.  In the general election held on Tuesday, November 7, 2000, Plaintiff King Butler sought to cast her ballot for Governor George W. Bush and Dick Cheney as President and Vice President of the United States.

19.     Plaintiff Dalton Bray is a resident of Clay County, Florida, and is a registered voter in Florida.  In the general election held on Tuesday, November 7, 2000, Plaintiff Bray sought to cast his ballot for Governor George W. Bush and Dick Cheney as President and Vice President of the United States.

20.     Plaintiff James S. Higgins is a resident of Martin County, Florida, and is a registered voter in Florida.  In the general election held on Tuesday, November 7, 2000, Plaintiff Higgins sought to cast his ballot for Governor George W. Bush and Dick Cheney as President and Vice President of the United States.

21.     Plaintiff Roger D. Coverly is a resident of Seminole County, Florida, and is a registered voter in Florida.  In the general election held on Tuesday, November 7, 2000, Plaintiff

Coverly sought to cast his ballot for Governor George W. Bush and Dick Cheney as President and Vice President of the United States.

22.     The above-named Plaintiffs, Siegel, Douglas, Dorta, Butler, Bray, Higgins and Coverly (the "Voter Plaintiffs"), are typical of Florida voters who were registered and eligible to vote in the November 7 statewide election.  Their validly cast ballots have now been counted twice.  The Voter Plaintiffs have a substantial constitutional interest in having those votes certified and released without further delay.  The Voter Plaintiffs also have a substantial constitutional interest in not having these votes debased by further recounts that are in no way linked to any showing of fraud or material irregularities in the voting process.  The Voter Plaintiffs' claims are typical of those of all voters.

23.     Defendants Barton, LePore, and Roberts are the members of the Palm Beach County canvassing board.  Defendants Leahy, King, and Lehr are the members of the Miami-Dade County canvassing board.  Defendants Carroll, Gunzburger, and Lee are the members of the Broward County canvassing board.  Defendants McDermott, McFall, and Northy are the members of the Volusia County canvassing board.  Defendants are all residents of the State of Florida and are sued in their official capacities only.

## FACTUAL BACKGROUND

24.     On November 7, 2000, the State of Florida held a general election wherein Florida voters cast ballots for several offices, including to choose electors of the President and Vice President of the United States.

25.     On November 8, 2000, the Division of Elections for the State of Florida reported that the Republican Party presidential ticket received 2,909,135 (48.8%) votes and the

Democratic Party presidential ticket received 2,907,351 (48.8%) votes (the "initial count").

Other candidates on the presidential ballot received a total of 139,616 votes.

26.     Under Florida law, at the close of a general election the election boards for each precinct are to open the ballot boxes in the presence of the public and count the ballots. Florida Statute 102.061. The election boards for each precinct must then deliver to the supervisor of elections for each county the ballots and ballot boxes, as well as a certificate of the results of the election. Florida Statute 102.061.

27.     Pursuant to Florida Statute 102.112, after each county's canvassing board has certified the returns, the returns for the election of federal or state officers must be forwarded to the Florida Department of State no later than 5 p.m. on the seventh day following the election. Otherwise, the returns may be ignored.

28.     Florida Statutes 102.111 and 102.121 provide that the Elections Canvassing Commission of the State of Florida must then certify the results of the election and issue certificates of the results of the election.

29.     Florida Statute 102.141(4) provides that if a candidate is defeated or eliminated by one-half percent or less of the votes cast for an office, then the Elections Canvassing Commission shall order a recount of the votes cast with respect to that office.

30.     On November 8, pursuant to Florida Statute 102.141(4), each of the canvassing commissions of Florida's sixty-seven counties began a recount of the returns. Media reports indicate that the recount has confirmed the outcome of the election.

31.     The multiple counting of the returns has raised several issues. For example, in at least one county (Gadsden County), the ballots were not merely recounted but rather

"interpreted" – or reinterpreted – by the county's canvassing board.  This resulted in additional ballots being counted.  This recount calculated a result different from that of the original count, resulting in a net gain of 153 votes in favor of the Democratic presidential ticket.  *See* Exhibit A (Statements of John M. Leace and Edgar E. Stanton).

32.     It is also clear that the repetitive counting of ballots – especially manual counting diminishes the accuracy of the counts.

33.     On November 8, 2000, while the automatic statewide recount was continuing, three local Democratic Party operatives filed an action styled as *Fladell v. Palm Beach County Commission* in the Circuit Court for the Fifteenth Judicial Circuit of the State of Florida, contesting the presidential election returns in Palm Beach County.  This action sought to void the presidential election results in Palm Beach County and requested that a new election be conducted in that jurisdiction for that race.  *See* Exhibit B.

34.     In addition to Defendants' conduct, upon information and belief, numerous lawsuits and other litigation have been commenced across Florida purporting to challenge the result of the election in Florida or otherwise delay the certification and release of those results.

     a.     On November 9, 2000, while the automatic statewide recount was still continuing, an action, styled as *Rogers v. Elections Canvassing Commission of the State of Florida* was also filed in the Circuit Court for the Fifteenth Judicial Circuit of the State of Florida, also contesting the presidential election returns in Palm Beach County, and seeking the same relief as that of *Fladell.*  (Exhibit C).

b.      On November 9, 2000, while the automatic statewide recount was still continuing, a complaint styled as *Miller v. Harris* was filed in the United States District Court for the Southern District of Florida, West Palm Beach Division.  This action also contested the presidential election results in Palm Beach County and sought a new election in that jurisdiction. (Exhibit D).

c.      Media reports have indicated that as many as five (5) additional lawsuits relating to the results of the election have been filed.  Plaintiffs have not been able to obtain copies of these suits.

35.     The gravamen of *Fladell, Rogers* and *Miller* is that the presidential election ballot used in Palm Beach County was "deceptive, misleading and/or confusing," and that the results of the election were therefore invalid.

36.     On November 9, 2000, again while the automatic statewide recount was still continuing, media reports indicated that either the Gore campaign, the Democratic party and/or some other entity or individual had filed requests for manual recounts of ballots in Palm Beach, Miami-Dade, Broward, and Volusia counties.

37.     Florida Statute 102.166 provides that any candidate or his party may file a written request with a county canvassing board for a manual recount within 72 hours after midnight of the date of the election or prior to the time the canvassing board adjourns, whichever occurs later.  Florida Statute 102.166 further provides that a county canvassing board need only make a "reasonable effort" to notify each candidate whose race is being manually recounted of the time and date of the recount.  The statute does not require that an opposing candidate or party be

notified of the request for the manual recount or the canvassing board's ruling as to the request, and/or the time and date upon which any manual recount will take place.

38.     Florida Statute 102.166 requires that the request for a manual recount "contain a statement of the reason the manual recount is being requested." Florida Statute 102.166(4)(a).

39.     Florida Statute 102.166 neither requires nor suggests that an opposing candidate or party be given the opportunity to be heard as to whether a manual recount should occur.  The statute apparently gives the county canvassing board complete discretion in making that decision, and it sets forth no standards for the determination of whether a manual recount should take place.

40.     The canvassing boards of Palm Beach and Volusia counties have consented to the request for a manual recount.  Both Volusia and Palm Beach Counties will begin manual recounts by Saturday, November 11, 2000.

41.     The canvassing boards of Miami-Dade and Broward counties have received requests from the Gore campaign and/or others to conduct a manual recount of the election results.  Upon information and belief, those canvassing boards have not yet determined whether they will consent to a manual recount.

## IRREPARABLE INJURY

42.     If Defendants' threatened manual recounts are allowed to proceed, Plaintiffs will suffer irreparable injury.  If an unlawful recount occurs, in violation of the First and Fourteenth Amendments, and a changed result happens to occur (however unlikely), that tainted result will be broadcast to the nation.  Any subsequent invalidation by this Court will not be able to cure the serious damage to the legitimacy of the presidential election.  Any such taint, and the perception

of multiple reversals in outcome, will interfere with the orderly transition of constitutional government.

**FIRST CLAIM FOR RELIEF**
(Violation of 42 U.S.C. § 1983 and the Fourteenth Amendment)

43.      Plaintiffs repeat and reallege paragraphs 1-42.

44.      Defendants' actions have violated the Voter Plaintiffs' rights under the Fourteenth Amendment by arbitrarily denying them the effective exercise of their right to vote and to have that vote counted in an equal and consistent fashion with all other voters in this election. The citizens of Florida cast their votes on November 7, 2000. These votes were counted according to the processes prescribed by law, with no allegation of fraud, error, or other misconduct in the conduct of the counting. In accordance with a vote count conducted pursuant to the laws of Florida, Governor George W. Bush and Dick Cheney were determined to have received the most votes. Pursuant to Fla. Statute 102.141(4), an automatic recount was conducted with the participation of local officials of both political parties. Again, there was no allegation that the counting was infected by fraud, error, or other misconduct, and Governor George W. Bush and Dick Cheney once again received the most votes. Pursuant to requests by certain individuals and voters, county officials in Palm Beach, Miami-Dade, Broward, and Volusia counties have begun or will shortly begin yet a third count of the ballots cast, this time manually.

45.      Florida law, as applied to these circumstances, threatens to inflict irreparable injury on the Voter Plaintiffs and on all similarly situated voters by arbitrarily denying full effect to the votes that they cast on November 7, 2000. It does so in the following ways. First, the provisions of Florida Statute 102.166 provide no standards to guide the discretion of the canvassing board in determining whether a manual recount is warranted in the first place or, if

11

so, what the scope, nature, manner, and method of such recount should be. For example, one county canvassing board has been asked to and has apparent discretion to grant a recount for three precincts only; three others have been asked and has discretion to grant a recount for the entire county. There is nothing in the statute to constrain the county canvassing boards' discretion as to how many precincts (beyond a minimum of three precincts) to recount. There is no rational basis for distinguishing which counties or precincts to recount, other than the unconstrained determination of the applicant that he may get more votes from those precincts selected.

46.     Second, Florida Statute 102.166 establishes no criteria to limit the discretion of the canvassing boards in determining how to conduct the tally of votes. One canvassing board may decide to count votes that are not fully punched; another may not. One canvassing board may decide that a stray mark indicates an intent to vote for a particular candidate; another board may not. One board may try to determine the intent of voters who marked multiple candidates on a ballot; another may not. Florida Statute 102.166 authorizes the county canvassing board to determine the subjective "intent" of a voter, without setting forth any standards for determining how to discern that intent. This creates arbitrariness in the implementation of a process that concerns the fundamental right to vote.

47.     Third, if a manual recount gives effect to partially punched ballots, or counts ambiguous ballots based on the canvassing boards' subjective interpretation of voters' intent, it has the effect of unconstitutionally diluting the votes of the other voters both in the affected county and in the counties not subject to recount.

48.     Because of this arbitrary and unconstrained decision-making authority conferred upon the county canvassing boards, a disappointed candidate in a close election can seek recounts in successive favorable jurisdictions until he is satisfied with the results, and thereby arbitrarily deny the force and effect of the votes cast and validly counted (and verified on recount) for the winning candidate.

49.     There is no reason to believe that a recount is more accurate than the initial count, or that subsequent recounts add any further accuracy.  In fact, empirical evidence indicates otherwise: that recounts diminish accuracy with each recount.  Ballots are degraded, and human error is common.  Thus, without any guarantee of increased accuracy, and at the virtually certain risk of increased inaccuracy, canvassing boards are given unbridled discretion to affect the results of an election through individual subjective decisions.

50.     And natural human error and subjectivity are not the only risks.  In an ordinary presidential election, where all votes occur on the same day and are tallied simultaneously, no one election official perceives his or her actions could materially affect the outcome of the election.  In these unique circumstances, however, the incentives for favoritism or worse – in the hopes that a small swing of votes could determine the President – are grossly magnified in a manual recount where individual counters have direct and subjective contact with the ballots.

51.     This potential for delay and uncertainty inherent in the above-described scheme is compounded by its interaction with Florida Statute 102.168.  That statute creates a means to carry on contests of election in the relevant circuit courts.  Such contests may be filed by any candidate, any voter, or even any taxpayer.  Such contests threaten to further delay the effective implementation of the ballots cast by Florida voters and increase the uncertainty that now exists

with respect to the result of the election.  Different challenges may be filed in different courts. There is a virtual certainty that different courts will react differently to similar claims.

52.    As a result, the process of selecting and certifying the decisive electors of the President and Vice President of the United States may be tied up in trial litigation and appellate litigation indefinitely, casting doubt on the integrity and legitimacy of the process for selecting the holder of the highest office in the land.  This circumstance, when combined with the arbitrary discretion vested in the canvas boards – if allowed to proceed unchecked – threatens to prevent the smooth and clear transition of Presidential power, a matter of paramount national interest.

53.    This unbridled discretion, as applied in the circumstances of this case, results in the arbitrary deprivation of the Voter Plaintiffs' right to vote under the Fourteenth Amendment.

## SECOND CLAIM FOR RELIEF
### (Violation of 42 U.S.C. § 1983:  Equal Protection)

54.    Plaintiffs repeat and reallege paragraphs 1-42 and 44-47.

55.    Because, for the reasons discussed, the statutory scheme produces arbitrary and capricious decision-making by state and county officials as to whose votes will count, and whose will not, in different precincts and counties, the scheme also violates the Equal Protection Clause of the Fourteenth Amendment.  If a manual recount gives effect to partially punched ballots, or counts ambiguous ballots based on the canvassing boards' subjective interpretation of voters' intent, it arbitrarily subjects voters in other counties to unequal treatment in violation of the Fourteenth Amendment.  Because a fundamental right is at issue here – the right to vote – the state's action is subject to strict scrutiny.

## THIRD CLAIM FOR RELIEF
(Violation of 42 U.S.C. § 1983 and the Fourteenth Amendment)

56.     Plaintiffs repeat and reallege paragraphs 1-42.

57.     Because the recount begun or about to begin by Defendants is limited to portions

of only four counties, the Voter Plaintiffs who are not residents or voters in those four counties

are being deprived of rights accorded to voters of those counties and/or will have their votes

diluted in violation of the Fourteenth Amendment.

## FOURTH CLAIM FOR RELIEF
(Violation of 42 U.S.C. § 1983 and the First Amendment)

58.     Plaintiffs repeat and reallege paragraphs 1-42.

59.     The right to vote in a democracy is among the most precious of all individual

rights, and is the crux of the democratic system.  The right to vote is clearly established under the

First Amendment of the Constitution of the United States.

60.     By their votes, the Voter Plaintiffs and all the other voters expressed a political

message regarding their choice of candidates for the Presidential election.  That message will be

delivered only when their votes are counted and certified for release by Defendants, such that

government can act on the Voter Plaintiffs' votes.  In this particular case, that message includes

selection and direction of electors to the Electoral College under the United States Constitution.

Voter Plaintiffs' votes are a means for orderly change of government under the United States

Constitution.  The message of the Voter Plaintiffs' votes, therefore, is at the core of political

speech and is entitled to the highest protection under the First Amendment to the United States

Constitution.

61.     The state's action in this case arbitrarily denies and burdens the Voter Plaintiffs'

votes and political speech.  Due to the standardless nature of the recount and contest scheme,

government officials are vested with arbitrary power and authority to deny the vote and thus thwart political speech. Such schemes are presumptively violative of the First Amendment.

62.     Defendants' actions and conduct are in willful disregard of the Voter Plaintiffs' constitutionally protected rights, and were committed with the intent of depriving the Voter Plaintiffs of their constitutional rights.

### FIFTH CLAIM FOR RELIEF
(Section 1983; Violation of the Fourteenth Amendment)

63.     Plaintiffs Governor George W. Bush and Dick Cheney repeat and reallege paragraphs 1-42.

64.     Under the Due Process clause of the Fourteenth Amendment, candidates for public office are entitled to due process in election procedures, including with regard to the fair and timely counting and reporting of the votes cast for that candidate.

65.     This Court should declare that Defendants' refusal to certify and release those votes that they have now counted twice since November 7 and their performance of any additional recounts violate the rights of Plaintiffs Governor George W. Bush and Dick Cheney under the Fourteenth Amendment.

WHEREFORE, Plaintiffs pray for a judgment and order:

(a)     Declaring that Defendants may not subject any vote totals to manual recounts;

(b)     In the alternative, declaring that Florida Statute § 102.166(4) is unconstitutional to the extent it does not limit the discretion of Defendants to conduct manual recounts in this case;

(c)     Declaring that Defendants should certify and release forthwith all vote totals that have been the subject of two vote counts since November 7, 2000;

(d)     Declaring that the form of ballot used in Palm Beach County was valid;

(e)     Declaring that any ballot punched or marked for two Presidential candidates not previously counted cannot now be counted;

(f)     Consolidating or removing to this Court any and all actions filed across the State of Florida purporting to challenge the results of the November 7 statewide election or otherwise delay the certification and release of those results; and

(g)     Granting such other and further relief as this Court shall deem just and proper.

Respectfully submitted,

Barry Richard, Esq.
GREENBERG TRAURIG, P.A.,
Tallahassee, Florida

Theodore B. Olson, Esq.
GIBSON DUNN & CRUTCHER LLP
Washington, D.C.

Benjamin L. Ginsburg, Esq.
PATTON BOGGS LLP
Washington, D.C.

- and -

WHITE & CASE LLP
Attorneys for Plaintiffs
Suite 4900
200 South Biscayne Boulevard
Miami, Florida  33131-2352
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744

By:
Marcos D. Jiménez
Florida Bar No. 441503

Of Counsel:

George J. Terwilliger III
Timothy E. Flanigan
WHITE & CASE LLP
Washington, D.C.

## VERIFICATION OF NED L.SIEGEL

1.      My name is Ned L. Siegel and I am over the age of twenty-one (21).

2.      I am a resident of Palm Beach County, Florida and the lead plaintiff in this action.

3.      I have read the allegations of the verified complaint, and the facts stated therein are true and correct.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of November, 2000.

Ned L. Siegel

IN THE COUNTY OF <u>GADSDEN</u>
STATE OF <u>FLORIDA</u>

### <u>STATEMENT</u>

Comes now your affiant, John M. Leace, and gives the following sworn statement:

On November 9, 2000 at approximately 8:45 A.M., I was in the chambers of the Honorable Richard L. Hood, County Judge of Gadsden County, Florida. Also present was Hal Richmond (the county attorney of Gadsden County), Dennis Crowley, and Edgar Stanton. The Presidential Election ballot recount was discussed. Judge Hood informed me that Al Gore had a net gain of over 150 votes after the recount. This was confirmed by Mr. Richmond. The two went on to explain how this occurred. They explained that as part of the Canvassing Board, they had been involved in the recount. Further, they explained that the ballots had not been simply recounted. A number of the ballots were not properly completed, and these ballots were examined by board members and "interpreted" by the board members. The improperly completed ballots, after examination were tallied for the respective candidates; this resulted in the net gain of 153 votes for Gore.

The ballots that were "interpreted" included ballots with abnormalities such as:

1) Ballots that had more than 1 candidate's bubble selected. The Board interpreted which candidate the voter intended based on some choices "not being fully erased" or where "one bubble was darker or more completely filled in."

2) Ballots with no candidate properly selected, but an "astrict or star" near one of the names.

3) Ballots that did not select a candidate but "had markings that indicated the voter's intent."

John M. Leace

**EXHIBIT**

_A_

IN THE COUNTY OF GADSDEN
STATE OF FLORIDA

## STATEMENT

Comes now your affiant, Edgar E. Stanton, IV, and gives the following sworn statement:

On November 9, 2000 at approximately 8:45 A.M., I was in the chambers of the Honorable Richard L. Hood, County Judge of Gadsden County, Florida. Also present was Hal Richmond (the county attorney of Gadsden County), Dennis Crowley, and John M. Leace. The Presidential Election ballot recount was discussed. Judge Hood informed me that Al Gore had a net gain of over 150 votes after the recount. This was confirmed by Mr. Richmond. The two went on to explain how this occurred. They explained that as part of the Canvassing Board, they had been involved in the recount. Further, they explained that the ballots had not been simply recounted. A number of the ballots were not properly completed, and these ballots were examined by board members and "interpreted" by the board members. The improperly completed ballots, after examination were tallied for the respective candidates; this resulted in the net gain of 153 votes for Gore.

The ballots that were "interpreted" included ballots with abnormalities such as:

1) Ballots that had more than 1 candidate's bubble selected. The Board interpreted which candidate the voter intended based on some choices "not being fully erased" or where "one bubble was darker or more completely filled in."

2) Ballots with no candidate properly selected, but an "astrict or star" near one of the names.

3) Ballots that did not select a candidate but "had markings that indicated the voter's intent."

Edgar E. Stanton, IV

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

CASE NO. **CL 00 10965 AN**

ANDRE FLADELL and
ALBERTA MCCARTHY
and LILLIAN GAINES,

     Plaintiffs,

vs.

PALM BEACH COUNTY
CANVASSING BOARD,
as constituted by County Court
Judge Charles Burton; Supervisor
of Elections Theresa LePore; and
County Commissioner Carol Roberts;
GEORGE W. BUSH, DICK CHENEY,
AL GORE and JOE LIEBERMAN,

     Defendants,

_____/

## COMPLAINT FOR DECLARATORY RELIEF

The Plaintiffs, ANDRE FLADELL, ALBERTA MCCARTHY and LILIAN GAINES,

through counsel, file this complaint against Defendants, PALM BEACH COUNTY

CANVASSING BOARD, as constituted by County Court Judge, Charles Burton;

Supervisor of Elections, Theresa LePore; and County Commissioner, Carol Roberts;

George W. Bush, Dick Cheney, Al Gore and Joe Lieberman, and states:

    1.    This is an action for declaratory and other relief concerning the adequacy

of the ballots booklets used in Palm Beach County only for the November 7, 2000

Presidential Election.

**EXHIBIT**

B

2.      All conditions precedent to the filing of this action have been performed or have been waived.

3.      Defendant, PALM BEACH COUNTY CANVASSING BOARD, as constituted by County Court Judge Charles Burton; Supervisor of Elections Theresa LePore; and County Commissioner Carol Roberts, is the duly appointed county canvassing board for Palm Beach County.

4.      Defendant, THERESA LEPORE, is the Supervisor of Elections for Palm Beach County, Florida.

5.      Defendant, George W. Bush, is a resident of the State of Texas and the Republican candidate and nominee for President of the United States and is joined in this action as an interested party pursuant to Florida Statute §86.091

6.      Defendant, Dick Cheney, is a resident of the State of Wyoming and the Republican candidate and nominee for Vice-President of the United States and is joined in this action as an interested party pursuant to Florida Statute §86.091.

7.      Defendant, Al Gore, is a resident of the State of Tennessee and the Democratic candidate and nominee for President of the United States and is joined in this action as an interested party pursuant to Florida Statute §86.091.

8.      Defendant, Joe Lieberman is a resident of the State of Connecticut and the Democratic candidate and nominee for Vice-President of the United States and is joined in this action as an interested party pursuant to Florida Statute §86.091.

9.      Plaintiffs, ANDRE FLADELL, ALBERTA MCCARTHY and LILIAN GAINES, are residents of Palm Beach County, Florida, duly qualified electors and taxpayers who voted in the November 7, 2000 Presidential Election.

2

10.    This is an action brought for declaratory judgment and supplemental relief which is within the jurisdiction of this Court.

11.    On November 7, 2000, a general election was held in which Palm Beach County voters voted for candidates for President and Vice-President.

12.    All of the candidates for the Presidential election were listed on two facing pages of the ballot booklet that is attached to each voting machine.

13.    The punch holes for each candidate were in a single column that ran between the facing pages.

14.    The names of independent (non-Democratic and non-Republican candidates such as Pat Buchanan) and the punch holes for such candidates were placed adjacent to the names of the Democratic Candidates, Al Gore and Joe Lieberman.

15.    As a result, many voters, and in particular, many senior citizens, intending to vote for Al Gore and Joe Lieberman, mistakenly punched the punch hole on the ballot card designated for Pat Buchanan and Ezola Foster (hole #2).

16.    In addition, the holes in the ballot cards for numbers 4 (Gore and Lieberman) and 5 (Pat Buchannan and Ezola Foster) were directly adjacent to the section of the ballot listing the Democratic candidates (Gore and Lieberman).  As a result, many voters, and in particular, many senior citizens, intending to vote for Al Gore and Joe Lieberman punched punch hole numbers 4 and 5 in the mistaken belief that such numbers referred to a vote for Al Gore and Joe Lieberman.   It has been reported in the Palm Beach Post that in Palm Beach County Reform Candidates (Pat Buchannan and Ezola Foster) received 3,040 votes.

17.   Palm Beach County was the only county to list the candidates on two pages. It is believed that such format had never before been used in a Presidential election and that said format created and contributed to much voter confusion. All sixty-six (66) other counties in Florida listed all candidates in a straightforward, non-confusing manner, listing each candidate vertically from top to bottom as prescribed by Florida Statute 101.191 (1999) ("Form of General Election Ballot."). Moreover, pursuant to Florida Statutes §101.151(4), §101.191 (1999), Defendant, THERESA LEPORE, was required by law to place the Democratic candidates in <u>second</u> position on the ballot (as the Democratic Party had received the second highest number of votes for Governor in the last election in which a Governor was elected), but instead placed the Democratic candidates in third position (third punch hole). Defendant, THERESA LEPORE, had no discretion to change the statutorily mandated position of the Democratic candidates on the ballot.

18.   A copy of the ballot as reproduced in the Sun-Sentinel is attached hereto as Exhibit "A". Plaintiffs are not currently in possession of the actual ballot booklets used in the election, but will obtain same through discovery.

19.   Plaintiffs contend that (1) as a result of the above-described positioning of the candidates on the ballots in violation of Florida law, the ballots in Palm Beach County as they pertain to the Presidential Election were inherently confusing, (2) that because of this positioning the Reform Party candidates, Pat Buchanan and Ezola Foster and possibly other independent candidates, received votes that were intended for the Democratic candidates, Al Gore and Joe Lieberman and (3) that because of this positioning, electors inadvertently punched more than one hold to vote for Al Gore and

4

Joe Lieberman, thereby invalidating their ballot and disenfranchising themselves.

20.    The Supervisor of Elections, Defendant, THERESA LEPORE, has taken the position during and after the election that the format used for the ballots and positioning of the candidates names was not misleading.

21.    Based upon the foregoing contrary contentions of the parties, an actual bona fide dispute exists between the parties as a result of which Plaintiffs are in doubt as to the validity of the results of the Presidential Election in Palm Beach County, Florida.

22.    It has been widely acknowledged by the media and political commentators that the results of the Presidential Election in Florida will be decisive as to whether the Democratic or Republican candidates are elected President and Vice-President. Without winning the election in Florida neither candidate can win the Presidential Election. Votes unintentionally cast for Buchanan in Palm Beach County will make a decisive difference in the outcome of the November 7, 2000 Presidential election.

23    This Court has the right, duty, and power to declare the rights and liabilities of the respective parties herein, and to give such other and further relief as may be necessary and proper under the circumstances.

24.    There is a bona fide, actual, present and practical need for the declaration and adjudication of the rights of the parties hereunder and the dispute described in this Complaint deals with a present, ascertained controversy.

25.    The controversy outlined above concerns an interpretation of a privilege and/or right of the parties dependent upon a determination and resolution of the facts described in this Complaint.

5

26.   The Plaintiffs have an actual, present, adverse and antagonistic interest in the subject matter outlined in this Complaint and all of the antagonistic and adverse interests are before this Court.

WHEREFORE, Plaintiffs requests that the Court declare the general election ballot as it pertains to the Presidential Election to be in violation of the foregoing statute, declare that said ballot is deceptive, confusing and/or misleading, declare the election results for the public office of President and Vice-President to be null and void and direct that a new general election for the office of President and Vice-President of the United States be held in Palm Beach County, Florida.

WEISS & HANDLER, P.A.
Attorneys for Plaintiffs
2255 Glades Road Suite 218A
Boca Raton, Florida 33431
(561) 997-9995/*Boca Raton*
(561) 734-8008/*West Palm Beach*
(561) 997-5280/*facsimile*


BY: _____
     HENRY B. HANDLER, ESQ
     Florida Bar No. 259284
     DAVID K. FRIEDMAN, ESQ.
     Florida Bar No. 307378

     Bruce Silver, Esq.
     Of Counsel
     Florida Bar No. 935182

C:\MyFiles\Election\Complaint.wpd

6



## Confusion at Palm Beach County polls

Some Al Gore supporters may have mistakenly voted for Pat Buchanan because of the ballot's design.

**Although the Democrats** are listed second in the column on the left, they are the third hole on the ballot.

**Punching the second hole** casts a vote for the Reform party

Staff graphic

IN THE CIRCUIT COURT OF THE
15TH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

CASE NO.:

BEVERLY ROGERS, and RAY KAPLAN,
individually and on behalf of
others similarly situated electors
in Palm Beach County, Florida,

      Plaintiffs,

v.

THE ELECTIONS CANVASSING COMMISSION
OF THE STATE OF FLORIDA; GOVERNOR JEB
BUSH; SECRETARY OF STATE KATHERINE
HARRIS; CLAY ROBERTS, Director of the
Division of Elections for the State of Florida;
THERESA LaPORE, Supervisor of Elections
for Palm Beach County; THE PALM BEACH
COUNTY ELECTIONS CANVASSING
COMMISSION; AL GORE; and GEORGE W. BUSH,

      Defendants.

_____/

## <u>COMPLAINT</u>

The Plaintiffs, BEVERLY ROGERS and RAY KAPLAN, individually and on behalf

of others similarly situated, electors in Palm Beach County, Florida sues Defendants, THE

ELECTIONS CANVASSING COMMISSION OF THE STATE OF FLORIDA; GOVERNOR

JEB BUSH; SECRETARY OF STATE KATHERINE HARRIS; CLAY ROBERTS, Director

of the Division of Elections for the State of Florida;  THERESA LaPORE, Supervisor of

Elections   for   Palm   Beach   County;   THE   PALM   BEACH   COUNTY   ELECTIONS


EXHIBIT
C

CANVASSING COMMISSION; AL GORE; and GEORGE W. BUSH, pursuant to Section 102.168, *Fla.Stat.*, and in support thereof allege the following:

1.      On November 7, 2000, an election was held in the United States of America, including throughout Palm Beach County, Florida, to elect the 43rd President of the country.

2.      On November 7, 2000, the Plaintiffs, BEVERLY ROGERS, RAY KAPLAN, AND SAM KAPLAN, and numerous other electors in Palm Beach County, Florida (hereinafter collectively referred to as "ROGERS"), presented to various polling stations throughout Palm Beach County with the intention of casting their ballots for the office of President of the United States of America on behalf of Al Gore, Jr.

3.      Various Florida Statutes govern the form of ballots to be utilized for elections held in the State of Florida.  Section 101.191, *Fla. Stat.*, provides the form to be utilized for general elections ballots.  That form clearly provides that candidates for the Office of President and Vice-President of the United States of America shall be listed along the left hand side of the ballot, with a blank space adjacent to the right of the candidate's name to be filled in to indicate a selection of that candidate.  Section 101.151, *Fla. Stat.*, provides detailed specifications for general election ballots, including the mandate that the candidates for any office shall be listed in the following order: the name candidate of the party which received the highest number of votes for governor in the last election in which a governor was elected shall be placed first under the heading for each office, together with an appropriate abbreviation of party name, to be followed by the name of the candidate of the party which received the second highest vote for governor.  Finally, Section 101.011, *Fla. Stat.*, provides that where paper ballots are used, the elector shall retire to a booth, alone, and place a mark after the name of the candidate of his or her

clearly violates Florida Law, the Plaintiffs and others similarly situated cast their ballots for a candidate for whom they had no intention of voting.

8.     A simple review of the polling data clearly and convincingly proves that a wrong was committed in Palm Beach County, Florida. In Broward County, Florida (one county to the south), of total ballots cast (573,183), Pat Buchanan received 789 votes, or .14 percent.

9.     In Martin County, Florida (one county to the north), of the total ballots cast (61,842), Pat Buchanan received 112 votes, or .18 percent.

10.     In Indian River County, Florida, of the total ballots cast (49,606), Pat Buchanan received 105 votes, or .21 percent.

11.     However, in Palm Beach County, the only county where these illegal ballots were utilized, of the total ballots cast (432,183), Pat Buchanan received 3,407 votes, or .788 percent. Buchanan received no more than 1,012 votes in any other county in this state, and received a total of 16,946 votes in the entire state See, Exhibit "B").

12.     Clearly the statistics and election results shown above reveal that Buchanan received a disproportionate share of the votes cast in Palm Beach County, Florida for President and Vice President. There should be no doubt that the results are directly related to the illegal design and use of the ballot in question.

13.     Section 102.168, Fla. Stat., governs the contest of elections. The statute provides that any elector qualified to vote to in the election related to the contested candidacy, or any taxpayer may file an action contesting the results of the election. Included among the permitted grounds for contesting an election are misconduct, fraud, or corruption on the part of any election official or any member of the Canvassing Commission sufficient to change or place in doubt the result of the election; or any other cause or allegation which, sustained, would show that a person other than the successful

candidate was the person duly elected to the office in question. Further, Section 102.168(7), *Fla. Stat.*, provides that any qualified elector or taxpayer presenting such a contest to a circuit judge is entitled to an immediate hearing thereon. Finally, under Section 102.168(8), *Fla. Stat.*, the circuit judge to whom the contest is presented may fashion such orders as he or she deems necessary to insure that each allegation in the complaint is investigated, examined or checked, to prevent or correct any alleged wrong, and to provide any relief appropriate under such circumstances.

14.   Under Section 102.141, *Fla. Stat.*, a county canvassing board shall first review the results of the election in that county and declare a winner of each office subject to election. Under Section 102.151, *Fla. Stat.*, the county canvassing board shall issue certificates containing the total number of votes cast for each person nominated or elected, the names of the persons for whom such votes were cast and the number of votes cast for each candidate or nominee. Those certificates shall be transmitted to the Department of State. Finally, under Section 102.155, *Fla. Stat.*, the supervisor of elections for the county shall give any person, for whom the election has been certified by the county canvassing commission, a certificate of the person's election, and that certificate of election shall be *prima facie* evidence of the election of such person.

15.   Section 102.111, *Fla. Stat.*, provides that the results of elections from each County shall be forwarded to the Department of State and the Election Canvassing Commission, which consists of the Governor of the State, the Secretary of the State, and the Director of Division of Elections. The Election Canvassing Commission shall, as soon as the official results are compiled from all counties, certify the returns from the election and determine and declare who has been elected for each office. Under Section 102.121,

## COUNT II

## CLAIM TO SET ASIDE ELECTION RESULTS

Plaintiffs incorporate and adopt the allegations of Paragraph Nos. 1 through 15 above, as if the same were fully set forth herein.

20.     Given the State law violations concerning the form and design of the ballot utilized in Palm Beach County, Florida, for the election of President and Vice-President of the United States of America, there is genuine dispute as to the validity of the number of votes cast for each candidate.

21.     Plaintiffs and others similarly situated believe they may have inadvertently voted for Pat Buchanan, the Reform Party candidate for President of the United States, when they in fact intended to vote for Al W. Gore, the Democratic Party candidate for President of the United States.

22.     The election for President and Vice-President of the United States has been extremely close, and in fact, the winner of the election hinges upon the outcome of the election for those offices in the State of Florida. Upon information and belief, an after a re-count of the votes cast for President and Vice-President of the United States, it is believed that the difference between the total votes cast in Florida for the Republican and Democratic party candidates for President of the United States will be less than two thousand (2,000) votes, and may indeed be less than one thousand (1,000) votes.

23.     Given the discrepancy in the votes cast for Pat Buchanan, and the errors and irregularities in the ballot utilized in Palm Beach County, the results of the election for President and Vice-President of the United States of America from Palm Beach County, Florida, must be set aside and a second general election for Palm Beach County called so

that a new ballot may utilized and the electors given a chance to vote for President and Vice-President of the United States with a ballot which complies with Florida law.

WHEREFORE, based on the foregoing, this Court must void the entire election throughout Palm Beach County, order that the ballot be re-designed to comply with all Florida Law, and schedule a re-election as soon as practicable.

DATED November 9, 2000.

David H. Krathen, Esq.
Fla. Bar No. 147810
Michael Freedland, Esq.
Fla. Bar No. 128988
LAW OFFICES OF DAVID KRATHEN
888 E. Las Olas Blvd., STE 200
Ft. Lauderdale, FL 33301

Gary M. Farmer, Jr., Esq.
GILLESPIE, GOLDMAN, KRONENGOLD
  & FARMER, P.A.
6550 N. Federal Highway, Suite 511
Fort Lauderdale, Florida 33308
Telephone No.: (954) 771-0908

Stephen A. Sheller, Esq.
SHELLER, LUDWIG & BADEY
1528 Walnut St., 3rd Floor
Philadelphia, PA 19102

By: _____
      GARY FARMER, JR.
      FLA. BAR NO. 914444

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9TH day of November, 2000, a true copy of the

foregoing was furnished by facsimile transmission and U.S. to:

Governor Jeb Bush
Office of the Governor, The Capitol
Tallahassee, FL 32399-0001
Phone: (850) 488-4441
Fax:    (850) 487-0801

Katherine Harris
Secretary of State
The Capitol
Tallahassee, Florida 32399
Phone: (850) 488-5500
Fax:    (850) 487-2214

L. Clayton Roberts,
Director of Florida Department of Elections
Department of State, Division of Elections
The Capitol, Room 1801
Tallahassee, FL 32399-0250
Phone: (850) 488-7690
Fax:    (850) 488-1768

Theresa LePore,
Supervisor of Elections
P.B.C. Governmental Center
301 North Olive Avenue, Room 105
West Palm Beach, FL 33401-4795
Phone: (561) 355-2650
Fax:    (561) 355-4006

Vice President Al Gore, Jr.
601 Mainstream Drive
Nashville, TN 37228
Phone: (615) 340-2000

Governor George W. Bush, Jr.
P.O. Box 1902
Austin, TX 78767
Phone: (512) 637-2000
Fax:    (850) 681-0184

By: _____
GARY FARMER, JR.
FLA. BAR NO. 914444



**EXHIBIT A**



Politics@TCPalm.com -- Everything under the sun online

the tcpalm native network: news sland | oh now | cntelelplace | oue | real estate | community

local news:   palm beach | jupiter | stuart | port st lucie | ft. pierce | vero beach | okeechobe

ELECTION 2000 >>
ELECTION NEWS
RESULTS

- martin county
- indian river county
- st. lucie county
- palm beach county
- florida

STATE PARTIES
- democrats
- libertarian party
- green party
- reform party
- republicans

CANDIDATES
- pat buchanan (ref)
- george w. bush (rep)
- al gore (dem)
- ralph nader (gre)

SECTIONS >>
NEWS
SPORTS
BUSINESS
WEATHER
FEATURES
ENTERTAINMENT
SERVICES >>
CLASSIFIEDS
YELLOW PAGES

**EXHIBIT H**

FLORIDA: UNOFFICIAL RETURNS >>

### President of the United States

| County | % Report | Bush / Cheney (REP) | Gore / Lieberman (DEM) | Browne / Olivier (LIB) | Nader / LaDuke (GRE) | Harris / Trowe (SWP) | Hagelin / Goldhaber (LAW) | Buchanan / Foster (REF) | McReynolds / Hollis (SPF) | Phillips / Frazier (CPF) |
|---|---|---|---|---|---|---|---|---|---|---|
| Alachua | 100.0% | 34,062 | 47,300 | 658 | 3,215 | 6 | 42 | 262 | 4 | 20 |
| Baker | 100.0% | 5,610 | 2,392 | 17 | 53 | 0 | 3 | 73 | 0 | 3 |
| Bay | 100.0% | 38,637 | 18,850 | 171 | 828 | 5 | 18 | 248 | 3 | 18 |
| Bradford | 100.0% | 5,413 | 3,072 | 28 | 84 | 0 | 2 | 65 | 0 | 2 |
| Brevard | 100.0% | 115,185 | 97,318 | 643 | 4,470 | 11 | 39 | 570 | 11 | 72 |
| Broward | 100.0% | 177,279 | 386,518 | 1,212 | 7,099 | 49 | 128 | 769 | 35 | 74 |
| Calhoun | 100.0% | 2,873 | 2,155 | 10 | 39 | 0 | 1 | 90 | 1 | 2 |
| Charlotte | 100.0% | 35,419 | 29,641 | 127 | 1,481 | 8 | 15 | 182 | 3 | 19 |
| Citrus | 100.0% | 29,744 | 25,501 | 194 | 1,378 | 5 | 18 | 270 | 0 | 18 |
| Clay | 100.0% | 41,745 | 14,630 | 204 | 562 | 1 | 14 | 186 | 3 | 6 |
| Collier | 100.0% | 60,426 | 29,905 | 185 | 1,400 | 7 | 34 | 122 | 4 | 10 |
| Columbia | 100.0% | 10,964 | 7,047 | 127 | 258 | 1 | 7 | 89 | 2 | 8 |
| Desoto | 100.0% | 4,256 | 3,322 | 23 | 157 | 0 | 0 | 35 | 3 | 8 |
| Dixie | 100.0% | 2,698 | 1,823 | 32 | 75 | 0 | 2 | 29 | 0 | 3 |
| Duval | 100.0% | 152,082 | 107,680 | 956 | 2,752 | 38 | 160 | 650 | 16 | 57 |
| Escambia | 100.0% | 73,029 | 40,958 | 287 | 1,729 | 8 | 24 | 504 | 3 | 110 |
| Flagler | 100.0% | 12,608 | 13,891 | 60 | 435 | 1 | 4 | 83 | 3 | 3 |
| Franklin | 100.0% | 2,448 | 2,042 | 17 | 85 | 1 | 3 | 33 | 0 | 3 |
| Gadsden | 100.0% | 4,750 | 9,565 | 24 | 139 | 3 | 4 | 39 | 3 | 7 |
| Gilchrist | 100.0% | | | | | | | | | |

Politics@TCPalm.com -- Everything under the sun online

**BACK TO TCPALM**

HELP | SITE MAP | SEARCH

FEATURES
- health & medicine
- travel
- food & family
- home & garden
- religion
- television
- entertainment
- science & technology
- books
- living
- trends

**TCPALM.COM**
- news
- sports
- business
- weather
- entertainment
- features
- real estate
- classifieds
- city plus
- water's edge
- extra
- more...

| County | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Glades | 100.0% | 3,300 | 1,910 | 52 | 87 | 0 | 1 | 29 | 0 | 2 |
| Gulf | 100.0% | 1,840 | 1,440 | 12 | 56 | 0 | 3 | 8 | 1 | 0 |
| Hamilton | 100.0% | 3,546 | 2,389 | 21 | 88 | 2 | 4 | 71 | 2 | 2 |
| Hardee | 100.0% | 2,153 | 1,716 | 11 | 39 | 6 | 2 | 24 | 9 | 7 |
| Hendry | 100.0% | 3,784 | 2,341 | 17 | 75 | 0 | 2 | 30 | 0 | 2 |
| Hernando | 100.0% | 4,743 | 3,239 | 11 | 103 | 3 | 1 | 22 | 2 | 7 |
| Highlands | 100.0% | 30,848 | 32,844 | 118 | 1,501 | 8 | 28 | 242 | 4 | 10 |
| Hillsborough | 100.0% | 180,713 | 169,529 | 1,196 | 7,488 | 35 | 217 | 845 | 30 | 68 |
| Holmes | 100.0% | 4,985 | 2,154 | 18 | 91 | 1 | 7 | 78 | 3 | 6 |
| Indian River | 100.0% | 28,627 | 19,769 | 123 | 950 | 4 | 13 | 105 | 2 | 13 |
| Jackson | 100.0% | 9,138 | 8,868 | 40 | 138 | 0 | 2 | 102 | 1 | 4 |
| Jefferson | 100.0% | 2,481 | 3,038 | 14 | 78 | 2 | 1 | 29 | 1 | 0 |
| Lafayette | 100.0% | 1,669 | 788 | 6 | 28 | 3 | 0 | 10 | 1 | 1 |
| Lake | 100.0% | 49,953 | 36,555 | 203 | 1,459 | 4 | 36 | 289 | 1 | 21 |
| Lee | 100.0% | 106,123 | 73,530 | 540 | 3,584 | 36 | 81 | 308 | 4 | 34 |
| Leon | 100.0% | 39,053 | 61,425 | 330 | 1,932 | 9 | 28 | 282 | 7 | 16 |
| Levy | 100.0% | 6,860 | 5,403 | 92 | 284 | 1 | 1 | 67 | 1 | 10 |
| Liberty | 100.0% | 1,316 | 1,011 | 12 | 19 | 0 | 3 | 39 | 0 | 1 |
| Madison | 100.0% | 3,038 | 3,011 | 19 | 54 | 0 | 2 | 29 | 1 | 1 |
| Manatee | 100.0% | 57,946 | 48,169 | 243 | 2,489 | 5 | 86 | 272 | 3 | 19 |
| Marion | 100.0% | 55,185 | 44,646 | 381 | 1,810 | 14 | 28 | 563 | 6 | 22 |
| Martin | 100.0% | 33,884 | 26,819 | 109 | 1,118 | 14 | 29 | 112 | 8 | 18 |
| Miami-Dade | 100.0% | 289,456 | 326,702 | 759 | 5,355 | 88 | 119 | 561 | 38 | 69 |
| Monroe | 100.0% | 16,059 | 18,493 | 162 | 1,080 | 1 | 26 | 47 | 0 | 3 |
| Nassau | 100.0% | 18,404 | 6,952 | 63 | 255 | 0 | 7 | 90 | 4 | 3 |
| Okaloosa | 100.0% | 52,043 | 16,924 | 313 | 994 | 4 | 15 | 287 | 2 | 33 |
| Okeechobee | 100.0% | 5,058 | 4,588 | 21 | 131 | 1 | 4 | 43 | 1 | 3 |
| Orange | 100.0% | 134,476 | 140,115 | 892 | 3,681 | 13 | 65 | 446 | 7 | 41 |
| Osceola | 100.0% | 25,246 | 28,177 | 309 | 732 | 10 | 21 | 145 | 5 | 10 |

FILED

NOV 0 8 2000

CLERK, USDC / SDFL / WPB

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

# 00 - 9004
# CIV-RYSKAMP

MILTON H. MILLER, a registered voter
of the State of Florida

     Plaintiff,

Case No.:

# MAGISTRATE JUDGE
# VITUNAC

v.

KATHERINE HARRIS, Secretary of State, Chief Election Officer,
THERESA LePORE, Supervisor of Elections for Palm Beach County, Florida, and
FLORIDA DEPT OF STATE, DIVISION OF ELECTIONS

    Defendant.

_____/

## COMPLAINT FOR EMERGENCY INJUCTIVE RELEIF

Plaintiff, MILTON H. MILLER, sues Defendants FEDERAL ELECTION COMISSON and PALM BEACH

ELECTIONS COMMISSION and states:

1.    This action seeks preliminary and permanent injunctive relief against Defendants to (1) maintain the status quo

until such time that a new election be held in Palm Beach County, Florida and (2) and to order a new election in Palm Beach

County

2    This action brings a Federal question based upon Federal law, the United States

Constitution, the Florida Constitution and Florida Statutes Title 9, chapters 97-107.

3.    This action properly lies in the Southern District of Florida, as all acts took place in this judicial district

## PARTIES

4.    Plaintiff is a citizen and resident of the United States and of Palm Beach County,

Florida, within the Southern District of Florida and is a male, over the age of 18.

5.    Plaintiff is a registered voter, registered to vote at precinct #214 in the city of Boca Raton, Palm Beach county,

Florida.

6    Defendant KATHERINE HARRIS, Secretary of State, is the Chief Election Officer

for the State of Florida

7    Defendant THERESA LePORE, is the Supervisor of Elections for Palm Beach County,

Florida



EXHIBIT

D

8       Florida Dept of State Division of Elections oversees all elections in the State of Florida.

9       At all times material, Defendants have acted through their agents and employees, acting within the scope of their employment, as well as on its own.

## GENERAL ALLEGATIONS

10.     Plaintiff went to the 1st Korean Christian Reform Church on November 7, 2000 where voting at precinct #214 is held

11.     At all times material, Plaintiff was supervised by agents of the Defendants.

12.     Plaintiff voted but was unsure of who he voted for as a result of the confusing and misleading ballot.

13.     Defendants agents were made aware of misleading and confusing ballot by Plaintiff, and others but took no action to rectify the situation.

14.     At the time of voting and to date, Plaintiff is unaware of who Plaintiff voted for, Al Gore or Pat Buchannon.

15.     According to Florida Statute 101.151(4) and 101.27 the order of the names of the candidates is stated as follows: [t]he names of the candidates of the party which received the highest number of votes for Governor of the last election in which the Governor was elected shall be placed first under the heading for each office, together with an appropriate abbreviation of the party name: the names of the candidate of the party which received the second highest vote for Governor shall be second under the heading for each office. . . . [m]inor political party candidates and candidates with no party affiliation shall have their names appear on the general election ballot following the names of recognized political parties in the same order as they were certified."

16      The names of the parties on the Palm Beach ballots were in the correct order. However, the names were zig-zagged so that the punch-holes were not in the correct order. The first party – Republican - received the first punch-hole. The second party Democrat received the third punch-hole with the Reform party receiving the second punch-hole.

17      Plaintiff meant to vote for Democrat – Al Gore – but was confused by the inherently unfair format and believes that he punched the second punch hole thus voting for the Reform Party and being denied his right to vote.

2

## PRELIMIARY AND PERMANENT INJUCTIVE RELIEF

18      Plaintiff restates and realleges paragraphs 1 through 17 as if stated herein.

19.      The general function of an injunction is to preserve the status quo until full relief can be granted following a final hearing. Tamiami Trail Tours, Inc. v Greyhound Lines, Inc. Southern Greyhound Lines Division. 212 So. 2d 365 (Fla 4th DCA 1968). See also: University of Texas v Camenish 451 U.S. 390, 395 (1981). The issuance of a preliminary injunction falls within the broad discretion of the court. A preliminary injunction must be based upon (1) irreparable harm, (2) a clear legal right (3) an inadequate remedy at law, (4) consideration of the public interest. Islandia Condominium Association Inc. v Vernaut, 438 So. 2d 89 (Fla 4th DCA 1983). Clearly the balance of equities heavily favors the plaintiff n this case such that justice requires the preservation of Plaintiff's statutory and common law right to vote with freedom for the candidate of his choice..

20      The status quo preserved by a preliminary injunction is the last peaceable non-contested condition that preceded the controversy. Baily v Christo, 453 So 2d 1134, 1137 (Fla 1st DCA 1984) citing Bowling v National Convoy & Trucking Co. 135 So 541 (Fla 1931). Thus the status quo sought to be maintained in this action is Plaintiffs statutory and common law right to vote.

21      The facts and application of law hereto indicate that Plaintiff faces irreparable harm and an inadequate remedy at law absent the issuance of a preliminary injunction. An injury is irreparable where the damages are estimable only by conjecture and not by any accurate standard. One must distinguish between the difficulty of proving that an injury exists and the difficulty of measuring the amount or extent of a proven injury. 42 Am. Jur 2d Injunctions sec. 49 at 790. Here an injury clearly exists wit the only question being the full extent thereof.

22      Plaintiff will suffer irreparable harm due to the Defendants actions in the event a preliminary and permanent injunction is not granted. Defendant's actions have caused Plaintiff to suffer emotional distress for which he can not adequately calculate money damages.

23  Furthermore, Plaintiff has no adequate remedy at law in that his vote is so unique as to be incapable of complete and adequate compensation through  money damages

24      "Irreparable harm is [resumed if the party seeking injunctive relief clearly established validity and continuing infringement of it's ... rights." Smith Int'l, Inc. v Hughes Tool Co., 718 F.2d 1573, 1581 (Fed Cir. 1983) cert denied 464 U.S. 996 (1983)

25 The equitable remedy of preliminary injunction allows Plaintiff to be made whole where the legal remedy is clearly
inadequate and damage to plaintiff's right to vote is irreparable.

26 Plaintiff has a clear legal right to the remedy requested of a preliminary and permanent injunction.

27 Plaintiff has a clear right to vote. He is a registered voter in the State of Florida.

28 Plaintiff was denied that right to vote as the ballot was inherently unfair and incorrect.

29 Clearly the prevention of Plaintiff's right to vote for whichever candidate he wants to vote for is contrary to public
interest.

30 The issuance of injunctive relief in this case would serve the public interest by protecting the rights of Plaintiff and also
all others who were similarly mislead by the ballot of Palm Beach County and thus denied their right to vote.

31 Any argument that the granting of an injunction allowing a new election in Palm Beach County would unduly harm
Defendants is without merit.

32 Respectfully the only way to properly insure the preservation of plaintiff's rights is to issue a mandatory preliminary
injunction which provides for the preservation of the status quo and a new election to be held in Palm Beach County,
Florida.

33 Plaintiff stands ready, willing and able to perform any act required by this Court or the law of Florida for the issuance of
a preliminary injunction, including but not limited to, the posting of a reasonable bond. However, given the
circumstances the plaintiff respectfully requests that any bond be a minimal amount.

WHEREFORE, Plaintiff moves this Honorable Court for the issuance of a preliminary injunction enjoining Defendants, their
officers, agents, employees and all those in active participation with them to preserve that status quo of the time immediately
prior to the election of November 7, 2000 and to further order a new election for the County of Palm Beach, Florida. And any
other relief the Court deems proper under the circumstances.

4

Respectfully submitted,

WALLBERG & RENZY, P.A.                    The Law Offices of Lawrence J. Navarro, P.A.
10100 West Sample Road                    16300 N.E. 19ᵗʰ Avenue
Third Floor                               Suite 206
Coral Springs, Florida 33010              North Miami Beach, Florida 33162
Tel: (954) 757-1212                       Tel: (305) 944-9490
Fax: (954) 757-7396                       Fax (305) 944-0307


By: _____               By: _____
Wendy S. Wallberg                          Lawrence J. Navarro
Florida Bar No.: 0047996                   Florida Bar No.: 989185
For The Firm
Ron Renzy
Florida Bar No.: 0958610
For The Firm


clients\m\mclasscomplaint

5

CLERK, USDC / SDFL / WPB

NOV 0 0 2000

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

## 00 - 9004

MILTON H. MILLER, a registered voter
of the State of Florida

    Plaintiff,

Case No. **CIV-RYSKAMP**

v.

**MAGISTRATE JUDGE VITUNAC**

KATHERINE HARRIS, Secretary of State, Chief Election Officer,
THERESA LePORE, Supervisor of Elections for Palm Beach County, Florida, and
Florida Dept of State, Division of Elections

    Defendant.

_____/

## EMERGENCY MOTION FOR INJUCTIVE RELEIF

Plaintiff, MILTON H. MILLER, by and through undersigned counsel files this

*Emergency Motion for Injunctive Relief* and states:

1.    Plaintiff went to the 1st Korean Christian Reform Church on November 7, 2000

where voting at precinct #214 is held.

2.    At all times material, Plaintiff was supervised by agents of the Defendants.

3.    Plaintiff voted for a presidential candidate but was unsure of who he voted for as a

result of the confusing and misleading ballot.

4.    Defendant's agents were made aware of misleading and confusing ballot by

Plaintiff, and others but took no action to rectify the situation.

5.    At the time of voting and to date, Plaintiff is unaware of who Plaintiff voted for, Al

    Gore or Pat Buchannon.

6.  Respectfully the only way to properly insure the preservation of plaintiff's rights is to

    issue a mandatory preliminary injunction which provides for the preservation of the

status quo and a new election to be held in Palm Beach County, Florida.

7. Plaintiff stands ready, willing and able to perform any act required by this Court or the law of Florida for the issuance of a preliminary injunction, including but not limited to, the posting of a reasonable bond. However, given the circumstances the plaintiff respectfully requests that any bond be a minimal amount.

8. Based on media reports, a re-count of the presidential vote is being made in Palm Beach and will be completed sometime today, November 9, 2000, at which time the voters choice for president will be determined.

9. Based on media reports, because of the historically close vote, only several hundred votes seperate the two presidential candidates, Al Gore and George W. Bush, media reports indicate that because of the misleading Palm Beach ballot, approximately 3,000 votes meant for Al Gore were made for Pat Buchanan. This could mistakenly give the election to George Bush.

10. The only fair and just way to resolve this problem is for this Court to order Palm Beach to hold a second vote for president of the United States using correct and comprehensible ballots.

WHEREFORE, Plaintiff moves this Honorable Court for the issuance of a preliminary injunction enjoining Defendants, their officers, agents, employees and all those in active participation with them to preserve that status quo of the time immediately prior to the election of November 7, 2000 and to further order a new election for the County of Palm Beach, Florida and any other relief the Court deems proper under the circumstances.

Respectfully submitted,

WALLBERG & RENZY, P.A.
Esq, P.A
10100 West Sample Road
Third Floor
Coral Springs, Florida 33010
Tel: (954) 757-1212
Fax: (954) 757-7396

By:
Wendy S. Wallberg
Florida Bar No.: 0047996
For The Firm
Ron Renzy
Florida Bar No.: 0958610
For The Firm

The Law Offices of Lawrence J. Navarro,

16300 N.E. 19ᵗʰ Avenue
Suite 206
North Miami Beach, Florida 33162
Tel: (305) 944-9490
Fax (305) 944-0307

By:
Lawrence J. Navarro
Florida Bar No.: 989185

**CIVIL COVER SHEET**

**00-9009**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

NED SIEGEL, GEORGETTE SOSA DOUGLAS, GONZALO DORTA, CARRETTA KING BUTLER, DALTON BRAY, JAMES S. HIGGINS, and ROGER D. COVERLY, as Florida registered voters, and GOVERNOR GEORGE W. BUSH and DICK CHENEY, as candidates for President and Vice President of the United States of America,

## DEFENDANTS

THERESA LePORE, CHARLES E. BURTON, CAROL ROBERTS, JANE CARROLL, SUZANNE GUNZBURGER, ROBERT LEE, DAVID LEAHY, LAWRENCE KING, JR., MIRIAM LEHR, MICHAEL McDERMOTT, ANN McFALL, and PAT NORTHY, in their official capacities as members of the County Canvassing Boards of Palm Beach, Broward, Miami-Dade and Volusia Counties, respectively,

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
**Palm Beach**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**Palm Beach**

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Marcos D. Jimenez, Esq.
White & Case LLP
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131-2352. Telephone: (305) 371-2700

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE
DADE, MONROE, BROWARD, **PALM BEACH**, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only) (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 1 | ☐ 1 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 2 | ☐ 2 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 3 | ☐ 3 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Section 1 of The Civil Rights Act of 1871, 42 U.S.C. § 1983, and the First and Fourteenth Amendments to the United States Constitution.

**IVa.** _____ days estimated (for both sides) to try entire case.

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce-ICC Rates-etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs | ☐ 830 Patents | ☐ 470 Racketeer Influence and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☒ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities-Commodities Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 864 SSID Title XVI | |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 441 Voting | ☐ 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 871 IRS—Third Party 28 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Refiled
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23

**DEMAND $**

Injunctive and Declaratory Relief

Check YES only if demanded in complaint
**JURY DEMAND:** ☐ YES ☒ NO

## VII. RELATED CASE(S)

IF ANY Miller v. Harris, et al. **Case No. 00-9004**

JUDGE Ryskamp    DOCKET NUMBER

DATE November 11, 2000    SIGNATURE OF ATTORNEY OF RECORD

---

UNITED STATES DISTRICT COURT    FOR OFFICE USE ONLY:    Receipt No. 831430    Amount 150.00

Date Paid: 11/13/00    M/ifp: _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

## Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I. (a) Plaintiffs - Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved).

(c) Attorneys. Enter firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction is based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an X in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below: federal question actions take precedence over diversity cases.)

**III. Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**V. Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**VI. Origin.** Place and "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Refiled. (4) Check this box for cases refiled in the district court. Attach copy of order.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate's decision.

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv. P

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS-44 is used to reference relating pending cases if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**(rev. 6/90)**